IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Francisco Javier Estrada,  ) | No. CV-08-1358-PHX-NVW (LOA) |
| Petitioner,  ) | **REPORT AND RECOMMENDATION** |
| vs.  ) |  |
| Warden Ricardo Chavez,  ) |  |
| Respondent.  ) |  |

This matter arises on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (docket # 1) Respondents have filed an Answer and Motion to Dismiss to which Petitioner has replied. (dockets # 11, 18) Petitioner has also filed a Motion for Discovery. (docket # 17)

**I.  Motion for Discovery**

"The writ of habeas corpus is not a proceeding in the original criminal prosecution but an independent civil suit." *Riddle v. Dyche*, 262 U.S. 333, 335-336 (1923); *See, e.g. Keeney v. Tamayo-Reyes*, 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting). However, modern habeas corpus procedure has the same function as an ordinary appeal. *Anderson v. Butler*, 886 F.2d 111, 113 (5th Cir.1989); *O'Neal v. McAnnich*, 513 U.S. 440, 442 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials" (emphasis omitted)). A habeas proceeding does not proceed to "trial" and unlike other civil litigation, a habeas corpus petitioner is not entitled to broad discovery. *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286, 295 (1969).

1  Although discovery is available pursuant to Rule 6, it is only granted at the Court's
2  discretion, and upon a showing of good cause. *Bracy*, 520 U.S. 899; *McDaniel v. United*
3  *States Dist. Court (Jones)*, 127 F.3d 886, 888 (9th Cir.1997); Rule 6(a) of the Rules
4  Governing Section 2254.

5  Petitioner does not demonstrate good cause why his request for discovery should
6  be granted. The record contains sufficient information to resolve Petitioner's claims.
7  Additionally, some of Petitioner's requests are unrelated to his current claims and appear to
8  allege a denial of medical treatment. (*see* docket # 17) (requesting x-rays of Petitioner's
9  shoulder, leg, jaw, and teeth, and requesting an examination of Petitioner's "right toe nail.")
10 Petitioner also seeks payroll records in relation to his allegation that he is receiving disparate
11 pay. Petitioner's allegations regarding his medical treatment and pay are not cognizable in
12 this § 2241 proceeding. Petitioner's request for discovery is denied.

13 **II.  Background**

14 Petitioner is currently an inmate at the Federal Correctional Institution in
15 Phoenix, Arizona ("FCI Phoenix"). (Respondents' Exh. 1)  FCI Phoenix is classified as a
16 medium security federal correctional institution. *See* www.bop.gov, facility locator.
17 Petitioner is currently serving a sentence of  235-months imprisonment to be followed by
18 10-year term  of supervised release. This sentence was imposed on April 25, 2002 in the
19 United States District Court for the Western District of Texas, case number EP-01-CR-1737-
20 DB, based on Petitioner's conviction for conspiracy to import a controlled substance in
21 excess of 1,000 kilograms (marijuana) in violation of 21 U.S.C. §§ 952, 960, 963.
22 (Respondents' Exh. 2. docket # 11-2 at 2)  Petitioner's current period of incarceration in FCI
23 Phoenix commenced in 2003.  (*Id.*)

24 Prior to Petitioner's current incarceration, he served an 18-month sentence for a
25 different offense at the Federal Correctional Institution in La Tuna, Texas ("FCI La Tuna), a
26 Low Security institution. (Respondents' Exh. 6, ¶ 2; Exh. 2, docket # 11-2 at 10; docket #
27 18, Exh. 36)  Following his release from La Tuna, Petitioner was placed on supervised
28 release. (Respondents' Exh. 2, docket # 11-2 at 10; Exh. 6 ¶ 2)   Petitioner subsequently

violated the terms of his supervised release by failing to report for supervision, failing to report for programs, and absconding from supervision. (Respondents' Exh. 6 ¶ 2; Exh. 2, docket # 11-2 at 8; docket # 18, Exh. 36-attachments C-H)

Upon his May 2003 commitment to FCI Phoenix, Petitioner was classified as a Medium Security inmate with 14 points. (Respondents' Exh. 6 ¶ 3, attachment A; Exh. 5) Petitioner was classified as either a Medium or High Security inmate until his May 22, 2006 Program Review when he was classified as a Low Security inmate.  (docket # 18, Exhs. 1-5)  Petitioner remained a Low Security inmate at his August 13, 2006 Program Review. (docket # 18, Exh. 7)   BOP submitted a transfer request for Petitioner requesting transfer to FCI La Tuna, which is closer to Petitioner's family.  The request was denied due to lack of bed space.  (Respondents' Exh. 6 ¶ 5; docket # 18, Exh. 19)

At Petitioner's May 2007 Program Review, Petitioner was classified as a Medium Security Inmate with 18 points.  (Respondents' Exh. 6 ¶ 4; Exh. 5; docket # 18, Exh. 8)   At Petitioner's June 3, 2008 Program Review, Petitioner remained a Medium Security inmate.  (Respondents' Exh. 6 ¶ 4, attachment C)  On June 6, 2008, BOP again requested a transfer for Petitioner to FCI La Tuna.  (Respondents' Exh. 6 ¶ 4; docket # 18, Exh. 22 - attachment A)   That request was denied because of Petitioner's security level, Medium, and because he is currently housed within 500 miles of his release jurisdiction. (Respondents' Exh. 6 ¶ 4; docket # 18, Exh. 22-attachment C)

Based on the foregoing, Petitioner filed the pending petition for habeas relief under § 2241. (docket # 1)  Petitioner challenges his Federal Bureau of Prisons' ("BOP") Custody Classification and denial of transfer to the Federal Correctional Institution in La Tuna, Texas ("FCI La Tuna"), a Low Security institution.  (docket # 1; www.bop.gov) Petitioner asserts that: (1) the application of Program Statement 5100.08, which was promulgated on September 12, 2006, to Petitioner's May 2007 custody review violates the Due Process Clause; (2) "the Warden exceeded its authority by applying PS P5100.08 to Petitioner after he was found to have earned eligibility to a low security" institution and, therefore, the application of Program Statement 5100.08 had an impermissible retroactive

effect and violated the Due Process Clause; (3) by retroactively applying P5100.08 to Petitioner and reclassifying Petitioner to medium security, the Warden violated the Due Process Clause; and (4) the Warden violated the due process and equal protection clauses by construing "probation violation" as equivalent to "escape", thereby enhancing Petitioner's custody points. (docket # 1 at 4-6)  In his Reply, Petitioner expands on these claims. (docket # 18)  Petitioner essentially challenges his custody classification and the denial of his request to be transferred to a low security institution.   Respondents assert that Petitioner's claims lack merit.  (docket # 11)

**III.  Jurisdiction**

A challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255.  However, a claim challenging the manner, location, or conditions of the execution of a sentence is properly brought under 28 U.S.C. § 2241. *See Brown v. United States*, 610 F.2d 672, 677 (9th Cir.1990).  To obtain relief under 28 U.S.C. § 2241, a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.  *Id*. (challenging content of inaccurate pre-sentence report used to deny parole); *Clark v. Floyd*, 80 F.3d 371, 372, 374 (9th Cir.1995) (contending time spent in state custody should be credited toward federal custody); *Barden v. Keohane*, 921 F.2d 476, 479 (3rd Cir.1990) (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody).  The issue, then, is whether Petitioner challenges the execution of his sentence.  If he does not, then this Court lacks habeas corpus jurisdiction over his claims.  28 U.S.C. § 2241.  The Court will consider this issue in the discussion of Petitioner's claims.

**IV.  Exhaustion**

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. *MacCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992); *Western Radio Services Co. v. Espay*, 79 F.3d 896, 899 (9th Cir.1996); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986).

Respondents concede that Petitioner properly exhausted his administrative remedies on the issue of custody classification and transfer to a low security institution.  (docket # 11 at 3)

**V.  Analysis**

        **A.  Custody Classification**

In Grounds One and Four, Petitioner argues that the application of Program Statement 5100.08 to classify Petitioner as a Medium Security inmate violates the Due Process Clause. Petitioner contends that he had previously scored as a Low Security inmate and had his custody classification raised to Medium Security when Program Statement 5100.07 was replaced by Program Statement 5100.08.  He seeks an order directing BOP to re-classify him as a Low Security inmate and to determine whether he qualifies for a transfer to FCI La Tuna, a Low Security Institution.  (docket # 1 at 9)

Pursuant to 18 U.S.C. § 3621(b), the BOP is responsible for designating a federal inmate to a penal or correctional facility and for making any subsequent transfers.  That statutory section states in relevant part:

> **(b) Place of imprisonment**.-The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
>   (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>   (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

The BOP's policy and procedures for designating and transferring inmates are set forth in the *Inmate Security Designation and Custody Classification Manual*. When Petitioner entered FCI Phoenix in 2003, the version of the *Security Designation and Custody Classification Manual* in effect was Program Statement ("PS") 5100.07 (effective Sept. 3, 1999 - Sept. 12, 2006). PS 5100.07 has been rescinded and replaced by PS 5100.08, effective September 12, 2006. www.bop.gov. It provides that, "[a]ll inmate classification decisions and related action will be made in accordance with the procedures in this Program Statement and are effective immediately. Implementation for each inmate shall occur in accordance with his or her next regularly scheduled custody review." PS 5100.08, pg. 5.

Petitioner argues that he had been classified as a Low Security inmate in 2006 under PS 5100.07, but after PS 5100.08 was implemented and applied at his May 2007 custody review, his classification increased to Medium Security. Petitioner explains that "under P[S] 5100.08, Chapter 4 section 8, the new policy adopted the PSR's Criminal History Points as reflected in the Final Judgment." (docket # 1 at 4) Petitioner contends that "[t]he Warden applied this policy five years after the sentencing court determined the final score and judgment without compliance to the limits imposed under § 4A1.2(e)(1)(2)(3) resulting in the Warden restarting the clock in administering Security Designation and Custody Classification. . . ." (docket # 1 at 4) In other words, Petitioner asserts that because PS 5100.08 replaced the scoring item "Type of Commitment" with "Criminal History Score," his custody classification increased. (docket # 1; docket # 18 at 4-5) Petitioner also asserts that the "Warden" erred by construing "probation violation" as equivalent to "escape" resulting in an increase in Petitioner's custody points. (docket # 1 at 7)

Courts have held that the BOP classification procedure is within the discretion of the Attorney General as delegated to the Director of the Bureau of Prisons. *See* 18 U.S.C. § 4081; 28 C.F.R. § 0.96; *Moody v. Daggett*, 429 U.S. 78 (1976). Program Statement 5100.08 provides guidelines for determining an inmate's security and custody classification. (Respondents' Exh. 4) The classification procedure involves the consideration of various

1 factors to determine the proper security and custody classification, as well as the institution
2 designation for each inmate.  These factors include severity of the current offense, length of
3 the current sentence, criminal history, history of violence, history of escape and escape
4 attempts, number and type of detainers, involvement with drugs and alcohol, mental or
5 psychological stability, institutional adjustment and responsibility.  (Respondents' Exh. 4,
6 PS 5100.08)

7 An inmate's custody classification is determined when he enters BOP custody.
8 The custody classification is re-calculated annually during the inmate's institutional Program
9 Review.  (Respondents' Exh. 4, PS 5100.08, chs. 1, 6)  As previously stated, Petitioner's
10 initial custody classification was completed on May 1, 2003, pursuant to Program Statement
11 5100.07 which was in effect at the time.  (Respondents' Exh. 5)   He was classified as a
12 Medium Security inmate at that time.  (Respondents' Exh. 5)  At Petitioner's subsequent
13 Program Reviews, he remained a Medium or High Security inmate until May 22, 2006,
14 when he was classified as a Low Security inmate.  (Respondents' Exh. 5; docket # 18, Exhs.
15 1-5)  Thereafter, PS 5100.07 was rescinded and replaced by PS 5100.08 (Respondents' Exh.
16 4)   Accordingly, PS 5100.08 was applied at Petitioner's May 3, 2007 and subsequent
17 Program Reviews.  (Respondents' Exh. 4, PS 5100.08, pg. 5)   Petitioner was classified as a
18 Medium Security inmate at his May 2007 Program Review.  (Respondents' Exh. 5)

19 Petitioner argues that changes made by PS 5100.08 resulted in his increase from
20 Low Security to Medium Security inmate.  Specifically, he argues that the replacement of
21 scoring item "Type of Prior Commitment" with "Criminal History Score" resulted in an
22 increase in his custody level.  (Respondents' Exh. 4, PS 5100.08 - ch. 4, pg. 8 and ch. 6, pg.
23 5)  Petitioner attributes the increases in his classification solely to the implementation of PS
24 5100.08. Petitioner, however, ignores his disciplinary infractions. Specifically, after his
25 May 22, 2006 Program Review, Petitioner was found to have committed three disciplinary
26 infractions: (1) an August 20, 2006 violation of Code 307, Refusing to Obey an Order; (2)
27 an August 20, 2006 violation of Code 312, Insolence to a Staff Member; and (3) a
28 November 7, 2006 violation of Code 310, Being Absent from Assignment.  (Respondents'

- 7 -

Exh. 6, attachment B)  These violations increased Petitioner's point total and raised his security level from Low to Medium.  (Respondents' Exh. 4; Exh. 5)  Based on his disciplinary record, Petitioner was scored as a Medium Security Level inmate on May 7, 2007.  (Respondents' Exh. 5; docket # 18, Exh. 8)  At Petitioner's June 3, 2008 Program Review, he again scored as a Medium Security Inmate.  (Respondents' Exh. 6)  Specifically, under Program Statement 5100.08, Petitioner scored as a 16-point Medium Security inmate.  (*Id*.)  In his Reply, Petitioner challenges the accuracy of the foregoing disciplinary violations and seeks to amend his complaint to include another claim related to the calculation of his custody classification.  (docket # 18 at 18)  Even if this Court concluded that Petitioner's disciplinary infractions were erroneous or that his custody level was inaccurately calculated, at most, that would impact the security level of the institution at which Petitioner would be eligible to serve his term of imprisonment and to which he could be transferred.  The length of his sentence would not change even if the Court accepted Petitioner's claims asserted in Grounds I and III and in the proposed amended claim asserted in the Reply.  (docket # 18)   Accordingly, Petitioner does not challenge the execution of his sentence, and this Court lacks habeas jurisdiction over these claims under § 2241.  *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (noting that prison classification and eligibility for rehabilitative programs in federal system are matters delegated by Congress to the discretion of federal prison officials and thus implicate "no statutory or constitutional entitlement sufficient to invoke due process.").   In view of the foregoing, the Court will also deny Petitioner's motion to amend as futile. *See Kay v. Placer Counter*, 219 Fed. Appx. 679 (9th Cir. 2007) (stating that if amendment would be futile, dismissal with prejudice is appropriate).  (docket # 19, docket # 18 at 20)

### B. Retroactive Application of Program Statement 5100.08

In Grounds Two and Three, Petitioner argues that his classification as a Medium Security Inmate is an *ex post facto* application of Program Statement 5100.08.  (docket # 1 at 5-6; docket # 18 at 8-18)  The Constitution provides that "[n]o bill of attainder or *ex post facto* law shall be passed."  U.S. Const. Article I, § 9, cl. 3.  The *Ex Post Facto* Clause

1 prohibits the enactment of laws which, "by retroactive application, increase the punishment
2 for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 250 (2000) (citations
3 omitted). A law violates the *Ex Post Facto* Clause if "it appl[ies] to events occurring before
4 its enactment," *Weaver v. Graham*, 450 U.S. 24, 29 (1981), and "produces a sufficient risk
5 of increasing the measure of punishment attached to covered crimes." *California Dep't. of*
6 *Corrections v. Morales*, 514 U.S. 499, 509 (1995).

7 Assuming Program Statement 5100.08 constitutes a "law" for purposes of the *Ex*
8 *Post Facto* Clause, it neither increased Petitioner's sentence nor resulted in the loss of any
9 good time credits. Accordingly, Petitioner cannot establish a violation of the *Ex Post Facto*
10 Clause. Morales, 514 U.S. 499 at 506 n. 3. Likewise, Petitioner has not established that the
11 application of rogram Statement 5100.08 to him gave rise to a due process violation.
12 Petitioner complains that after the promulgation of Program Statement 5100.08, he received
13 a higher custody classification score. While the Due Process Clause protects against the
14 revocation of good-time credits, it does not provide the same level of protection against
15 other forms of discipline. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). In *Moody v.*
16 *Daggett*, 429 U.S. 78, 88 (1976), the Supreme Court has held that inmates are not afforded
17 due process protections in the context of prisoner classifications. The Court stated that:

> The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

21 *Id*. at 88 n. 9. *See also Schroder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995) (stating that
22 a state prison may transfer an inmate back to a more secure facility despite a prison
23 regulation requiring him to be held in the least restrictive confinement. And noting that
24 prison administrators retain broad discretion over the transfer of inmates, therefore, no
25 liberty interest were triggered). Petitioner's custody classification does not affect the fact or
26 length of his confinement. Therefore, Petitioner's claims raised in Ground II and III are not
27 cognizable in a § 2241 action.

**C. Denial of Transfer to Low Security Institution**

Petitioner also challenges BOP's denial of his request to transfer to FCI La Tuna, a Low Security Institution in El Paso, Texas. He requests an order directing BOP to transfer him to FCI La Tuna.

The BOP may, at any time, move an inmate from one prison to another without giving the inmate notice or a hearing regarding the transfer. *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991). Courts have consistently held that inmates are not entitled to due process protections in relation to discretionary transfers between prison facilities. *See Montayne v. Haymes*, 427 U.S. 236, 242-43 (1978) (finding no constitutional right to be housed in a particular state prison); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (holding that no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate). Prisoners have no inherent constitutional right to placement in any particular prison; transfers to any particular prison; any particular security classification; or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (finding that "just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."). Due process rights are only triggered by the deprivation of a legally cognizable property interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir.2003). Prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *White v. Lambert*, 370 F.3d 1002, 1013-1014 (9th Cir.2004) (stating that there is no constitutional right to imprisonment in a specific prison); *Wilson v. Wrigley*, No. CIV F-07-0142 LJO DLB HC, 2007 WL 1378024 at *2 (E.D.Cal. May 10, 2007) (petitioner is not entitled to habeas corpus relief under § 2241 because his request to be transferred to a different institution does not impact the duration of his confinement).

In sum, Petitioner does not have a constitutional right to be transferred to a facility more desirable to him, such as FCI La Tuna. *See Grayson v. Rison*, 945 F.2d 1064

- 10 -

1  (9th Cir.1991).  Even though Petitioner had no right to be housed at a particular institution,
2  staff at FCI Phoenix twice requested a transfer for Petitioner to FCI La Tuna.  However, the
3  Designation and Sentence Computation Center, Grand Prairie, Texas ("DSCC"), denied both
4  transfer requests.  The denial of those requests did not give rise to a constitutional violation.

### D.  Medical Care and Programs at FCI Phoenix

In his Reply, Petitioner challenges the quality of his medical care and the availability of rehabilitative programs at FCI Phoenix.  (docket # 18 at 13)  These claims are not cognizable on federal habeas corpus review.  Under § 2241, habeas corpus relief is available to a federal prisoner in custody under the authority of the United States if he can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1) & (3).   Petitioner's allegations regarding his medical care and access to rehabilitative programs do not challenge the fact or duration of his confinement.  Rather, those claims challenge the conditions of his confinement.  A civil rights action, not a habeas corpus proceeding, is the proper mechanism for a prisoner seeking to challenge the conditions of his confinement. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *see also, e.g., Evans v. U.S. Penitentiary*, No. CIV F-07-1611 OWW GSA HC, 2007 WL 4212339 at *1 (E.D.Cal. Nov.27, 2007) (petitioner is not entitled to habeas corpus relief under § 2241 because his claims regarding a recent transfer and inadequate medical care concern conditions of his confinement); *Blow v. Bureau of Prisons*, 2007 WL 2403561 at *1 (E.D.Cal. Aug.20, 2007) (habeas corpus relief under § 2241 does not extend to petitioner's requests for a transfer to another facility and access to the law library because they concern conditions of his confinement).  *Cf. Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991) (state prisoners should challenge conditions of confinement in a civil rights action under 42 U.S.C. § 1983, not in a habeas corpus proceeding). Accordingly, Petitioner is not entitled to habeas corpus relief under § 2241.

///

///

- 11 -

**V. Conclusion**

In summary, Petitioner does not have a constitutional right to his particular custody classification or facility designation. Additionally, the application of Program Statement 5100.08 to Petitioner did not violate the *Ex Post Facto* Clause.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus (docket # 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motions for Discovery (docket # 17) and Motion to Amend (docketed as # 19, but appearing at page 20 of docket # 18) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 6th day of April, 2009.

Lawrence O. Anderson
United States Magistrate Judge

- 12 -